1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10   HAIKEL GSOURI,

11                       Plaintiff,

12         v.

13   SCOTT GENTRY, *et al*.,

14                       Defendants.

CASE NO. 3:18-cv-5472 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: August 23, 2019

15

16         The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States

17   Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), and local

18   Magistrate Judge Rules MJR1, MJR3 and MJR4.

19         In this 42 U.S.C. § 1983 civil rights action, plaintiff alleges that several of plaintiff's

20   constitutional rights were violated, including having legal mail opened outside his presence,

21   being placed in isolated confinement, being denied access to the phone, and otherwise cruel and

22   unusual punishment related to his conditions of confinement. Dkt. 8, p. 3-19. But he does not

23   specifically identify who violated each of these rights. *Id.* Defendants move for summary

24

judgment, arguing that they did not personally participate in the alleged deprivation of plaintiff's constitutional rights, and that they are entitled to qualified immunity. Dkt. 36, p. 1, 9.

Plaintiff is incarcerated on civil contempt charges related to violating a court order and may be released from jail when he complies with the order. Plaintiff also has multiple no-contact orders against him, leading to at least fifteen blocked numbers, and authorities have been monitoring all of plaintiff's communications. Plaintiff was placed in administrative segregation for violating the no-contact orders.

Plaintiff has not provided evidence to show that defendants personally participated in depriving plaintiff of constitutional rights. Accordingly, this Court recommends that defendants' motion for summary judgment be granted.

## PROCEDURAL HISTORY

Plaintiff, Haikel Gsouri, proceeding *pro se* and *in forma pauperis,* filed his complaint on July 17, 2018. Dkt. 5. This complaint was deficient, and plaintiff filed an amended complaint on August 6, 2018. Dkt. 8.

On June 3, 2019, defendants served plaintiff with a *Rand* notice, notifying him of his obligations with regard to responding to a summary judgment motion, and also served copies of the motion for summary judgment and supporting documentation. *See* Dkts. 36, 38.

Plaintiff filed a response to defendants' motion for summary judgment on July 8, 2019 Dkt. 43. Defendants filed their reply on June 28, 2019.[1] Dkt. 41.

Plaintiff's complaint was signed under penalty of perjury and is being considered as evidence. Dkt. 8, p. 4. Because plaintiff is *pro se*, the Court "must consider as evidence in his

---

[1] A delay occurred in the Court receiving plaintiff's response. However, defendants received their copy of the response sooner, and filed their reply before the Court received plaintiff's response. *See* Dkt. 49.

opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

FACTS

Plaintiff has been incarcerated on civil contempt charges for over two years. Plaintiff was involved in divorce proceedings and was ordered to make child and spousal support payments. *See* Dkt. 37, p. 1; *see also Haikel Gsouri v. Nahed Jallali,* Case No. 15-3-03071-7, Superior Court of Washington, Clark County.[2] Plaintiff failed to follow the state court's order and a contempt hearing was held March 17, 2017. Dkt. 37, p. 6-12. Plaintiff was first incarcerated on March 17, 2017. Dkt. 37, p. 26. Plaintiff appealed his civil confinement and the Washington State Court of Appeals affirmed the superior court on April 30, 2019. Dkt. 37, p. 13-16. The state court held regular contempt review hearings, yet plaintiff continued to defy the court's order and remained in jail. *See* Dkt. 37, p. 3-4, 43-46, 47, 48-49, 50-55, 56-60. Moreover, plaintiff had the opportunity to be released at any time upon notifying the prosecutor that he was willing to comply with the order. Dkt. 37, p. 26.

Jail staff recorded a phone call wherein plaintiff made threatening statements about his ex-wife, including that he would kill her, which led to the first of many no-contact orders on April 7, 2017. Dkt. 37, p. 2-3, 27, 31-32, 34. Thirteen additional no-contact orders followed. *See* Dkt. 37, p. 3, 39, 41-42. While incarcerated, plaintiff repeatedly violated the no-contact orders,

---

[2] This Court takes judicial notice of court filings and other matters of public record pursuant to Fed. R. Evid. Rule 201. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

1  which led to plaintiff being placed in segregated housing. Dkt. 40, p. 4-6. Plaintiff was also

2  discovered to have utilized other inmates to communicate with individuals on his no-contact list,

3  which led to further monitoring of plaintiff communications under direction of the prosecutor

4  and Washington State Superior Court. Dkt. 40, p. 5-6. Plaintiff's housing classification was

5  reviewed weekly. Dkt. 40, p. 5-6, 15-31.

6

7                                    STANDARD OF REVIEW

8          The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

9  over the material facts before the court and the moving party is entitled to judgment as a matter

10  of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds*

11  *by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled

12  to summary judgment if the evidence produced by the parties permits only one conclusion.

13  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

14          To determine if summary judgment is appropriate, the court must consider whether

15  particular facts are material and whether there is a genuine dispute as to the material facts left to

16  be resolved. Fed. R. Civ. P. 56(c). The materiality of a given fact is determined by the required

17  elements of the substantive law under which the claims are brought. *Anderson*, 477 U.S. at 248.

18  Factual disputes that do not affect the outcome of the suit under the governing law will not be

19  considered. *Id.* Where there is a complete failure of proof concerning an essential element of the

20  non-moving party's case on which the nonmoving party has the burden of proof, all other facts

21  are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*

22  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the

23  evidence presented through the prism of the substantive evidentiary burden").

24

REPORT AND RECOMMENDATION - 4

1    However, when presented with a motion for summary judgment, the court shall review

2    the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477

3    U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed . . ." *Pena v.*

4    *Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))

5    (other citation omitted). With these standards in mind, it is important to note that the plaintiff

6    bears the burden of proof at trial over the issues raised in his motion. *See Grimes v. City and*

7    *Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991).

8    Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing

9    the motion must do more than simply show that there is some metaphysical doubt as to the

10    material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The

11    opposing party cannot rest solely on his pleadings but must produce significant, probative

12    evidence in the form of affidavits, and/or admissible discovery material that would allow a

13    reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249-50. In other words, the

14    purpose of summary judgment "is not to replace conclusory allegations of the complaint or

15    answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497

16    U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from

17    facts are jury functions, and not the function of the court. *See United Steel Workers of America v.*

18    *Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

19

20    DISCUSSION

21    In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the

22    conduct complained of was committed by a person acting under color of state law and that (2)

23    the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

24

laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

In stating a claim under § 1983, plaintiff must allege facts showing how each defendant caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Moreover, a § 1983 suit cannot be based on vicarious liability—that is, holding a supervisor responsible for the actions of his or her subordinate—but must allege that defendant's own conduct violated plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989). A supervisor may be held liable only "if there exists either, (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between a supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991), *cert. denied* 502 U.S. 1074 (1992).

In his complaint, plaintiff alleges the following: (1) plaintiff was denied his right to legal mail and access to the court; (2) plaintiff's due process rights were violated when he was placed in administrative segregation and denied access to the phone; (3) plaintiff suffered cruel and unusual punishment when he was placed in administrative segregation and an unclean cell; and (4) plaintiff was denied equal protection of the law when he was placed in administrative segregation for infracting jail rules when other inmates who broke the same rule were not placed in segregation.

## I.     Plaintiff's Right to Confidential Legal Mail and Access to the Courts

### *Legal Mail*

Plaintiff alleges that his legal mail was opened outside of his presence on several occasions. *See* Dkt. 8, p. 3, 4-5. "[P]risoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d

1  1204, 1211 (9th Cir. 2017) (concluding the protected First Amendment interest extends to civil

2  legal mail). Consistent with the First Amendment, prison officials may (1) require that mail from

3  attorneys be identified as such and (2) open such correspondence in the presence of the prisoner

4  for visual inspection. *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *see also Procunier*

5  *v. Martinez*, 416 U.S. 396 (1974) (prisons have the authority to inspect incoming and outgoing

6  mail.)

7       Plaintiff alleges the following instances of legal mail opened outside his presence: (1)

8  November 17, 2017 at 4 p.m. by Deputy Elliot (Dkt. 8, p. 3); (2) November 21, 2017 at 10 p.m.

9  by Deputy Beeks (Dkt. 8, p. 3); (3) January 2, 2018 by Deputy Beeks (Dkt. 8, p. 5); January 29,

10 2018 by Deputy Sargent (Dkt. 8, p. 5). Plaintiff included exhibits to support his allegations,

11 including copies of the grievance process and the response from jail personnel. *See* Dkt. 8, p. 21-

12 29. Plaintiff does not allege that defendants Gentry and Tangen personally opened his mail, but

13 that "all my matters in jail are decided by [defendants]." Dkt. 8, p. 5. To demonstrate supervisory

14 liability, plaintiff must show that "the supervisor participated in or directed the violations, or

15 knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045

16 (9th Cir. 1989). Plaintiff states that the opening of his legal mail outside his presence was

17 "intentional behavior . . . [that] [defendant] Gentry and my prosecutor set up." Dkt. 8, p. 20. But

18 the specific conduct by defendant Gentry is not otherwise explained or supported by admissible

19 evidence.

20      As an initial matter, the facts do not demonstrate that a constitutional violation regarding

21 plaintiff's mail occurred. Plaintiff has presented evidence that defendants were aware that

22 plaintiff's legal mail had been opened outside of his presence, and that plaintiff filed grievances

23 documenting these instances. *See* Dkt. 8-1, p. 1-2; Dkt. 40, p. 8, 32-33. Regarding the January 29

24

1  incident, defendants acknowledge that plaintiff's mail appears to have been opened prior to

2  plaintiff receiving it. *See* Dkt. 8-1, p. 4-6. Evidence submitted by plaintiff shows that the mail

3  from the January 29 incident was from a court, but not from plaintiff's attorney. *See* Dkt. 8-1, p.

4  5-6. Although jail policy is that mail from the court is considered legal mail (*see* Dkt. 8-1, p. 6),

5  the Ninth Circuit has held that legal mail is only correspondence between the prisoner and his

6  attorney—not mail from the court. *Keenan v. Hall,* 83 F.3d 1083, 1094 (9th Cir. 1996) *amended*

7  *by* 135 F.3d 1318 (9th Cir. 1998); *see also Hayes*, 849 F.3d at 1211 (explaining the First

8  Amendment does not prohibit opening mail from the courts outside the recipient's presence).

9  Thus, no constitutional violation occurred from the January 29 grievance.

10        Regarding the November 17 and November 21 incidents, defendants admit that plaintiff's

11  legal mail had been opened and that they took his grievance seriously. The grievance

12  investigation showed that the front desk staff had unintentionally opened plaintiff's legal mail.

13  *See* Dkt. 8-1, p. 2. Defendant Tangen stated in the grievance response that:

14        I have confirmed that this did happen again . . . [and] it is our policy to open legal
          mail in the inmate's presence, and not to read it. While there is no indication that

15        anyone read your mail, it was clearly opened prior to your receipt. I have
          communicated this situation to the manager of the mail processing unit, and have

16        asked for more careful handling of legal mail.

17  Dkt. 8-1, p. 2. The Chief Jail Deputy also reviewed plaintiff's grievance:

18        The Commander has confirmed this did happen, twice, and has contacted the
          manager supervising the individuals to correct the problem. This was not

19        intentional, as indicate[d], and we are taking steps to ensure this does not happen
          again. Your grievance is upheld.

20
    Dkt. 8-1, p. 3. All of the admissible evidence leads to the conclusion that even though plaintiff's

21
    legal mail was opened twice outside of his presence, it was unintentional and defendants took

22
    steps to correct the problem. The Ninth Circuit has held that there was no intentional

23
    constitutional violation where a prison guard could not have reasonably foreseen that another

24

guard would have opened an inmate's legal mail outside the inmate's presence. *Stevenson v. Koskey,* 877 F.2d 1435, 1440-41 (9th Cir. 1989). Unintentional violations amount at most to negligence, which do not give rise to constitutional claims under § 1983. *Id.*

Plaintiff alleges that the January 2 incident[3] involves plaintiff receiving a piece of legal mail that arrived to him with tape on it, appearing to have been previously opened. *See* Dkt. 8-1, p. 7. Defendants do not deny that plaintiff received this mail with tape on it, but assert that there is no evidence that either defendant personally opened the mail or directed the legal mail to be opened. Dkt. 36, p. 12; *see also* Dkt. 8-1, p. 7-9; Dkt. 40, p. 35. The grievance investigation showed that this piece of mail arrived at the jail with tape on it. *See* Dkt. 8-1, p. 9; Dkt. 40, p. 37.

In sum, plaintiff has not supplied evidence that shows that defendants violated plaintiff's constitutional rights when his mail was opened outside of his presence.

Plaintiff also appears to assume that defendants are violating his rights by complying with a valid court order to monitor his communications. It should first be noted that the jail has the authority to inspect incoming and outgoing mail. *See Procunier v. Martinez*, 416 U.S. 396 (1974). Moreover, as discussed in the facts *supra,* plaintiff repeatedly violated a valid no-contact order which included mailing a letter to a prohibited individual, which led to plaintiff being placed in administrative segregation and monitoring of all his communication. Dkt. 40, p. 3-6; Dkt. 37, p. 42.

Plaintiff points to several exhibits which he believes are evidence that allegedly shows that defendant Gentry "set something for my incoming and outgoing mail, and since then all my legal mail come open." Dkt. 8, p. 5 (citing Dkt. 8, p. 72). One email exhibit states that "[plaintiff]

---

[3] This incident appears to have actually occurred on February 1, 2018. *See* Dkt. 8-1, p. 7; Dkt. 40, p. 35. Two places on the document are dated and signed "2/3/18" and the narrative states "last night 1/2/18 officer Beeks handed me a legal mail . . ."

is under a court order to have his mail screened. All mail coming out from [plaintiff] is placed in a mail bin . . . and screened daily."). Dkt. 43, p. 12 (citing Dkt. 46, p. 84). An email to defendant Gentry from a Commander in the Sherriff's office dated June 27, 2017 states:

> Not sure if you knew about incoming mail and outgoing for [plaintiff]. If you did set something up for mail I don't want to reinvent the wheel. When you get back contact me or [the prosecutor. . . ] to make sure we are restricting mail correctly.

Dkt. 8, p. 72.

In his responsive brief, plaintiff refers to another email stating that defendant Gentry is responsible for collecting plaintiff's mail. Dkt. 43, p. 12 (citing Dkt. 46, p. 86). This email from defendant Tangen to another Clark County Jail staff, which is in response to a question regarding whether there was "[a]nything interesting in [plaintiff's] mail?" states:

> Nothing has been reported to me. [Defendant] Gentry is personally monitoring this issue so it would be best to ask him directly.

Dkt. 46, p. 86.

Thus, it is clear from plaintiff's own evidence that he was under a court order to have his mail monitored. *See* Dkt. 39, p. 16. Plaintiff does not appear to dispute the validity of the court order. Plaintiff has not presented admissible evidence that either defendant was personally involved in opening plaintiff's legal mail or directed others to open his legal mail outside plaintiff's presence.

*Access to Courts*

It is unclear whether plaintiff is making a First Amendment claim solely regarding his legal mail, or his mail in general. Plaintiff states that he received a notice from the Social Security Administration regarding his upcoming hearing the day before the hearing was scheduled even though it had been mailed several weeks before. *See* Dkt. 8, p. 7. Plaintiff further alleges that "the jail has held my mail after they opened it and delivered it to me the night before

1  the hearing which caused me to miss my [Social Security] hearing and denial of my claim . . .

2  because my disability claim is my way out of the jail, and that was not in the interest of my

3  prosecutor or [defendant] Gentry." Dkt. 8, p. 7.

4        Plaintiff also states that mail plaintiff sent to the Washington Supreme Court was delayed

5  (Dkt. 8, p. 6), and that these alleged infractions occurred because defendants, along with the

6  prosecutor, were "delaying the delivery of my legal mail coming in or going out was another

7  violation purposely done to make me miss [my] filing due date or respond within the [t]ime

8  frame allowed by Court." Dkt. 8, p. 6. The Court interprets plaintiff's allegations as a claim that

9  defendants intentionally interfered with plaintiff's access to the courts.

10       Prisoners have a liberty interest in the receipt of mail, which triggers procedural due

11  process guarantees. *Krug v. Lutz,* 329 F.3d 692, 696-97 (9th Cir. 2003). If prison officials

12  withhold mail, a prisoner has due process right to receive notice that his incoming mail is being

13  withheld. *See Frost v. Symington,* 197 F.3d 348, 353-54 (9th Cir. 1999).

14       The due process clause guarantees prisoners the right of meaningful access to the courts.

15  *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, as discussed above, plaintiff must present

16  admissible evidence to demonstrate that defendants personally participated in denying plaintiff's

17  constitutional right. *Arnold*, 637 F.2d at 1355. To prevail on a right to access claim, a plaintiff

18  must provide sufficient information establishing a "nonfrivolous" or "arguable" underlying

19  claim. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff must go beyond conclusory

20  allegations or mere assertions and set forth probative evidence to show that there is a genuine

21  issue of fact. *See Taylor,* 880 F.2d at 1045; *Anderson,* 477 U.S. at 249-50.

22       Here, plaintiff's allegations are conclusory and without factual support from the evidence

23  plaintiff provided, and plaintiff appears to again rely on defendants' requirement to screen

24

1    plaintiff's mail pursuant to a valid court order (*see* Dkt. 8, p. 7 (citing Dkt. 8-1, p. 52)) as

2    evidence that defendants deliberately interfered with his access to the courts. However, plaintiff

3    has produced no evidence, other than conclusory allegations, that his mail was being withheld for

4    some unconstitutional purpose. To the extent that plaintiff's mail was delayed because of a valid

5    court order for jail staff to screen his mail, plaintiff provides no admissible evidence that

6    defendants personally and intentionally delayed plaintiff's mail or directed others to do so.

7            Regarding plaintiff's late notice of his Social Security hearing, plaintiff's evidence shows

8    that plaintiff had the opportunity to contact the Social Security Administration by phone before

9    his hearing. *See* Dkt. 8-1, p. 59. Moreover, plaintiff admitted in a deposition that his Social

10   Security attorney had made him aware of his hearing more than a month before the hearing. Dkt.

11   37-6, p. 2. The Supreme Court has held that a prisoner must show some actual injury resulting

12   from a denial of access in order to allege a constitutional violation. *Lewis v. Casey*, 518 U.S. 343,

13   349 (1996). An actual injury consists of some specific instance in which an inmate was actually

14   denied meaningful access to the courts. *Id*. at 350-55.  Here, the evidence submitted does not

15   show that plaintiff was denied meaningful access to the courts.

16           Accordingly, this Court recommends that summary judgment be granted in favor of

17   defendants as to plaintiff's claim that he was denied his right to legal mail and access to the

18   courts.

19       **II.     Plaintiff's Due Process Claim**

20           In his second claim, plaintiff states that, in violation of due process, plaintiff was

21   "isolated in a rubber room with 24 hours lock down, with no access to the phone for almost a

22   month, so I was not able to call for legal help." Dkt 8, p. 7-8.

23

24

REPORT AND RECOMMENDATION - 12

*Administrative Segregation*

Plaintiff alleges that his due process rights were violated when he was placed in administrative segregation. In his third claim, plaintiff alleges that his Eighth Amendment rights were also violated when he was placed in administrative segregation. *See* Dkt. 8, p. 13. Because these claims both arise out of the plaintiff's placement in administrative segregation, they will be discussed together, *infra*.

*Access to Phone*

Plaintiff alleges that he was denied access to the phone for over a month. Dkt. 8, p. 7. He states that he was blocked from calling over fifteen individuals even though his "no contact list at this Time has only 3 people." Dkt. 8, p. 8. He also states that his phone rights were violated "By Keeping Turning off the phone on my only Hour out then offer to call [my attorney] on my Behalf, wich [sic] will not keep my communication with my lawyer confidential." Dkt. 8, p. 8.

"Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986), *amended by* 135 F.3d 1318 (9th Cir. 1998); *see also Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (per curiam) (concluding no right to a specific phone rate).

As discussed in the sections above, plaintiff must show that defendants personally participated in preventing plaintiff from using the phone. *Arnold*, 637 F.2d at 1355. In the grievance plaintiff submitted regarding allegedly being prevented from calling his lawyer, plaintiff states that "I tried to call my lawyer that the court just assigned for me, but the officer did not let me by turning the phone off, yesterday, [defendant Gentry] told me that I can call my lawyer..." Dkt. 8-1, p. 10. Defendant Gentry responded to plaintiff's grievance stating that

1    plaintiff was "not prohibited from contacting [his] attorney. . . I have made this information very

2    clear to the Pod Control Deputies." Dkt. 8-1, p. 10; *see also* Dkt. 39, p. 32, 33, 35. Thus, plaintiff

3    has produced no admissible evidence that defendant Gentry personally prevented plaintiff from

4    contacting his attorney, nor directed others to do so. In fact, plaintiff's own evidence shows that

5    defendant Gentry took steps to ensure that plaintiff could contact his attorney.

6        Plaintiff also alleges that the phone was turned off on his hour out of his cell, and that the

7    court only had ordered three numbers blocked. Dkt. 8, p. 8. Submitted evidence shows that

8    plaintiff had numerous individuals—more than three—that he was barred from contacting

9    pursuant to a valid court order. *See* Dkt. 37, p. 35, 37-39, 42, 43. Plaintiff's grievance alleges that

10   "I have phones here but im [sic] blocked to use them." Dkt. 8-1, p. 12. The response to plaintiff's

11   grievance was not addressed by either defendant, but another officer who stated, "You have

12   numerous blocked numbers but the phone system is not blocked to you. . . The reason you have

13   so many numbers blocked is due to you having other inmates call numbers for you and you

14   calling them after you had the no contact order. Your visiting isn't cancelled you can only visit

15   with people that you don't have no contact orders with." Dkt. 8-1, p. 13.

16       Plaintiff cites to an email as evidence that defendants were responsible for preventing

17   plaintiff's phone access. *See* Dkt. 8, p. 8 (citing plaintiff's exhibits 33-34 (Dkt. 8-1, p. 70-71)).

18   This email states that "[t]he attached document has phone numbers that were provided by Jeffery

19   Dong. These phone numbers have been blocked in the Telmate system so that calls cannot be

20   made or received." Dkts. 8-1, p. 70. Thus, it does not appear that plaintiff was denied his right to

21   use the phone, but that numbers from his no-contact list were blocked. Moreover, plaintiff has

22   presented no admissible evidence to show that either defendant personally participated in

23

24

1    denying plaintiff access to the phone or that blocking these numbers violated his constitutional

2    right.

3       Accordingly, this Court recommends that summary judgment be granted in favor of

4    defendant as to plaintiff's claim that he was denied his right to use the phone.

5      **III.**  **Plaintiff's Claims Regarding Administrative Segregation**

6       As previously stated, this case is unique in that plaintiff is incarcerated on civil contempt

7    charges. Plaintiff alleges that he was placed in administrative segregation in violation of his due

8    process rights, and that being placed in administrative segregation was cruel and unusual

9    punishment. Dkt. 8, p. 7, 13. As a detainee who has not been convicted of a crime, the Due

10   Process Clause of the Fourteenth Amendment protects plaintiff by prohibiting the State from

11   punishing him. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see also Mendiola-Martinez*

12   *v. Arpaio,* 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("pretrial detainees are entitled to the

13   potentially more expansive protections of the Due Process Clause of the Fourteenth

14   Amendment").

15      *Procedural Due Process*

16      Plaintiff asserts that being placed in administrative segregation violated his due process

17   rights. Dkt. 8, p. 7. While administrative segregation "typically . . . in and of itself does not

18   implicate a protected liberty interest," it may do so under certain circumstances. *Serrano v.*

19   *Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *see also Smith v. Noonan*, 992 F.2d 987, 989 (9th

20   Cir. 1993) (an inmate does not have a right to be free from administrative segregation). Because

21   plaintiff has no liberty interest in any specific custody level, holding plaintiff in administrative

22   segregation does not violate any right or duty owed him. *Olim v Wakinekona*, 461 U.S. 238, 245

23

24

1  (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236,

2  243 (1976).

3  Nonetheless, in the limited circumstances where the liberty does exist, "due process

4  requires only the following procedures: (1) prison officials must hold an informal non-adversary

5  hearing within a reasonable time after the prisoner is segregated; (2) the prison officials must

6  inform the prisoner of the charges against the prisoner or their reasons for considering

7  segregation; and (3) prison officials must allow the prisoner to present his views." *Toussaint v.*

8  *McCarthy,* 801 F.2d 1080, 1100 (9th Cir. 1986) (footnote omitted). "[D]ue process does not

9  require detailed written notice of charges, representation by counsel or counsel-substitute, an

10  opportunity to present witnesses, or a written decision describing the reasons for placing the

11  prisoner in administrative segregation." *Id.* at 1100-01.

12  The uncontradicted evidence demonstrates that plaintiff's housing classification status

13  was reviewed weekly. Dkt. 40, p. 5-6, 15-31. Plaintiff also had regular hearings in state court to

14  review his civil contempt charges. *See* Dkt. 37, p. 3-4, 43-46, 47, 48-49, 50-55, 56-60. Moreover,

15  plaintiff had the opportunity to be released from incarceration altogether at any time by

16  informing the court that he was willing to comply with the terms of the court order. Thus, no

17  procedural due process violation occurred related to plaintiff being placed in administrative

18  segregation.

19  *Due Process and the Eighth Amendment*

20  Plaintiff states that "my isolation and the condition of my solitary confinement was a

21  cruel and unusual punishment simply because it Totally [sic] disproportionate to the infraction

22  committed (610), so it was used for improper means, and that make[s] it a violation of my eight

23  [sic] amendment." Dkt. 8, p. 15.

24

1    The Fourteenth Amendment's Due Process Clause protects pretrial detainees from

2    excessive force. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015). This standard also

3    applies when analyzing practices used in disciplinary segregation. *See LeMaire v. Maass*, 12

4    F.3d 1444, 1452-53 (9th Cir. 1993). Absent evidence of intent to punish, a pretrial detainee's

5    right to be free from punishment are not violated if conditions or restrictions used are reasonably

6    related to a legitimate objective. *See Block v. Rutherford*, 468 U.S. 576, 584 (1984) (citing *Bell*

7    *v. Wolfish*, 441 U.S. 520, 538-39 (1979)). Plaintiff must also demonstrate that his placement in

8    administrative segregation was "objectively unreasonable." *Kingsley,* 135 S. Ct. at 2473.

9    "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'"

10    without regard to the officers' underlying intent or motivation. *Id.* (quoting *Graham v. Connor*,

11    490 U.S. 386, 396 (1989)).

12    Here, plaintiff has failed to show that defendants acted unreasonably when placing

13    plaintiff in administrative segregation. The evidence demonstrates that defendants were acting

14    pursuant to a valid court order to prevent plaintiff from violating his no-contact order. Dkt. 37, p.

15    42. When plaintiff was housed in the general population, he repeatedly made attempts to contact

16    the individuals on his no-contact list, both directly and through other inmates. Dkt. 40, p. 4-5.

17    Defendants determined that plaintiff's communications could not be adequately monitored while

18    plaintiff was housed in the general population. *See* Dkt. 39, p. 2-4; Dkt. 40, p. 2. Plaintiff's

19    housing classification status was reviewed weekly. Dkt. 40, p. 5-6, 15-31. Once plaintiff

20    demonstrated that he was able to refrain from contacting the prohibited individuals, he was

21    housed in the general population. Dkt. 40, p. 6.

22

23

24

1    Accordingly, plaintiff has failed to present admissible evidence that his placement in

2   administrative segregation was objectively unreasonable or that it was not reasonably related to a

3   legitimate objective. *See Kingsley,* 135 S. Ct. at 2473; *Block*, 468 U.S. at 584.

4        *Conditions of Confinement*

5        Plaintiff alleges that when he was placed in segregated housing, "sleeping on the floor,

6   with no Blanket in low Temperature cell, I was not allowed to leave the cell [. . .] I had no access

7   to shower, phone or any Kind of Hygeine For 27 days in a row." Dkt. 8, p. 13. Plaintiff also

8   alleges that his cell was "barely cleaned" and "very contaminated." Dkt. 8, p. 16.

9        According to the Ninth Circuit, "constitutional questions regarding the conditions and

10  circumstances of [civil detainees'] confinement are properly addressed under the due process

11  clause of the Fourteenth Amendment, rather than under the Eighth Amendment's protection

12  against cruel and unusual punishment." *Or. Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1120 (9th

13  Cir. 2003). To bring a Fourteenth Amendment conditions of confinement claim, plaintiff must

14  show that the conditions "put the plaintiff at substantial risk of suffering serious harm." *Castro v.*

15  *County of Los Angeles,* 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). Plaintiff must also show

16  that the official's conduct was "objectively unreasonable," or "more than negligence but less

17  than subjective intent—something akin to reckless disregard." *Id.* at 1071. As with all § 1983

18  claims, plaintiff must show that "the supervisor participated in or directed the violations, or knew

19  of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

20       Plaintiff states that a jail officer told him that "there is misconduct by the jail staff and

21  that all this is happening under the watch of [defendants], as they are the one's [sic] who control

22  my situation." Dkt. 8, p. 14. On the face of his complaint, plaintiff does not allege that

23  defendants directly participated in the misconduct alleged. The second-hand hearsay statements

24

1   of an unidentified jail officer is not admissible evidence and is not sufficient to withstand a

2   motion for summary judgment. Plaintiff has not provided admissible evidence that defendants

3   directed the jail staff to deprive him of basic sanitation or necessities. Plaintiff has also not

4   provided evidence that defendants knew that plaintiff had been deprived of these necessities. The

5   mere fact that defendants are supervisors is not enough to show that they personally participated

6   in, or directed, the alleged harm. *See Taylor,* 880 F.2d at 1045; *Rodriguez v. Cty. of Los Angeles*,

7   891 F.3d 776, 798 (9th Cir. 2018).

8           The evidence plaintiff provided supports plaintiff's mistaken belief that "[defendants']

9   reason to put me through this was a 610 infraction wich [sic] is very common infraction done by

10  hundreds of inmates every day," (Dkt. 8, p. 13). Plaintiff claims that his conditions were

11  constitutional violations "simply because it was totally disproportionate to the infraction

12  committed . . . [and was] not necessary to maintain order." Dkt. 8, p. 15. However, it is clear that

13  plaintiff's placement in administrative segregation is related to his violation of the no-contact

14  order. The evidence he supplied does not support the allegations that defendants were in charge

15  of his alleged unhealthful conditions, or that they failed to prevent them. *See Matsushita Elec.*

16  *Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 n.11 (1986) (the party opposing summary

17  judgment "cannot rest solely on his pleadings but must produce significant, probative evidence in

18  the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to

19  find in his favor"). Therefore, plaintiff has not shown that defendants personally participated in

20  the alleged conditions of confinement violations.

21          This Court recommends that defendants' motion for summary judgment should be

22  granted as to plaintiff's claims regarding administrative segregation and conditions of

23  confinement.

24

1    ### IV.    Plaintiff's Equal Protection Claim

2    Plaintiff states that his rights to equal protection were violated when he was placed in "24

3    Hour lock down for an infraction commonly committed by inmates every day in jail . . . and they

4    barely get infracted for, and if they are . . . [they] will not be subject to the same punishment or

5    sanctions I faced. (blocked phone, no visit permanently, isolation, etc. . . .)." Dkt. 8, p. 17. In his

6    response to defendants' summary judgment motion, plaintiff points to several instances where

7    inmates have used others' PIN numbers but were not placed in administrative segregation. Dkt.

8    43, p. 6-7.

9    An equal protection claim under the Civil Rights Act, 42 U.S.C. § 1983, requires, as a

10   necessary element, that defendants acted with the intent to discriminate. *Barren v. Harrington*,

11   152 F.3d 1193, 1194 (9th Cir. 1998). To sustain an equal protection claim under 42 U.S.C. §

12   1983, plaintiff needs to show purposeful discrimination. *See Draper v. Rhay*, 315 F.2d 193, 198

13   (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful

14   discrimination"). Mere evidence of disparate impact on minorities is insufficient. *Village of

15   Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 256 (1977);

16   *Washington v. Davis*, 426 U.S. 229, 239-40 (1976).

17   The United States Supreme Court has observed that "showing that different persons are

18   treated differently is not enough without more, to show a denial of Equal Protection." *Griffin v.

19   County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 230 (1964). In addition, plaintiff must

20   demonstrate that he was "treated differently [. . .] because he belonged to a protected class."

21   *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995), (citing *Divers v. Department of Corr.*, 921

22   F.2d 191, 193 (8th Cir. 1990)).

23

24

1    Here, plaintiff has not provided evidence that he belonged to a protected class of

2 individuals. Moreover, plaintiff has not shown how he was treated differently than other

3 individuals who violated no-contact orders. Plaintiff appears to believe that he has been placed in

4 administrative segregation because he violated jail policy by using other inmate's PIN numbers.

5 *See* Dkt. 43, p. 5.

6    As has been discussed throughout this report and recommendation, plaintiff was placed in

7 administrative segregation because he repeatedly contacted individuals he was prohibited from

8 contacting. Put another way, plaintiff was segregated because of *who* he tried to contact, not

9 because of *how* he tried to contact them. Administrative segregation was necessary to enforce the

10 court's no-contact orders, as plaintiff continued to contact individuals from his no-contact list.

11 The evidence plaintiff submitted does not support his claim that he was denied equal protection.

12    Accordingly, summary judgment should be granted in favor of defendants regarding

13 plaintiff's equal protection claim.

14    **V.    IFP Status for Purposes of Appeal**

15    The Court recommends revoking plaintiff's *in forma pauperis* status for purposes of

16 appeal. IFP status on appeal shall not be granted if the district court certifies "before or after the

17 notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P.

18 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if

19 he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any

20 arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v.*

21 *Williams*, 490 U.S. 319, 325 (1989). Because plaintiff's complaint lacks any arguable basis in

22 fact, the district court should certify that an appeal would not be taken in good faith.

23

24

1

CONCLUSION

2    The undersigned recommends that defendants' motion for summary judgment (Dkt. 36)

3    be **GRANTED** and that plaintiff's claims should be **DISMISSED WITH PREJUDICE**.

4    Plaintiff's *in forma pauperis* status should be revoked for purposes of appeal.

5    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

6    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

7    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

8    review by the district judge (*see* 28 U.S.C. § 636(b)(1)(C)), and can result in a result in a waiver

9    of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

10    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

11    Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

12    matter for consideration on **August 23, 2019**, as noted in the caption.

13    Dated this 8th day of August, 2019.

14

15

16

17    J. Richard Creatura
    United States Magistrate Judge

18

19

20

21

22

23

24